**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

P ARIS H UGHES,

Petitioner,

v.

C ARMEN P ALMER,

Respondent.
_____/

Case No. 15-cv-12653

U NITED S TATES D ISTRICT C OURT J UDGE
G ERSHWIN A. D RAIN

U NITED S TATES M AGISTRATE J UDGE
P ATRICIA T. M ORRIS

## O PINION AND O RDER D ENYING P ETITION F OR W RIT OF H ABEAS C ORPUS AND D ECLINING TO I SSUE C ERTIFICATE OF A PPEALABILITY OR L EAVE TO A PPEAL *I N F ORMA P AUPERIS* [10]

Petitioner Paris Hughes, currently confined at the Michigan Reformatory in Ionia, Michigan, filed a petition for writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254. Hughes challenges his convictions for armed robbery, M ICH . C OMP . L AWS § 750.529; first-degree home invasion, M ICH . C OMP . L AWS § 750.110a(2); unlawful imprisonment, M ICH . C OMP . L AWS § 750.349b; two counts of felonious assault, M ICH . C OMP . L AWS § 750.82; felony-firearm, M ICH . C OMP . L AWS § 750. 227b; and possession of a short-barreled shotgun, M ICH . C OMP . L AWS § 750.224b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. Petitioner's co-defendant, Chaz Jackson, was tried separately and convicted of first-degree home invasion. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> [Terrance] Minnifield, the victim, was at the gym on the night in question when he received a phone call notifying him that his house had been broken into. When he arrived home, the alarm was still sounding, the side door was unlocked, and his bedroom window was open. He called the police, who arrived over an hour later, and who left after asking minimal questions. Minnifield went into his basement and fell asleep watching television.
>
> Minnifield awoke some time later to find two men standing over him, one of whom was pointing a shotgun at his face. Both men were wearing hooded sweatshirts and masks, so Minnifield never saw their faces. The man with the shotgun told Minnifield to turn off the security alarm. After Minnifield turned off the alarm, the men laid Minnifield on his stomach in the kitchen, bound his hands and feet with duct tape, and duct-taped a towel around his head. One man stayed with him, holding a shotgun to his back, while a second looked through his house.
>
> At some point during the burglary, the police arrived at Minnifield's residence. One of the intruders untied Minnifield and tried to take him back to the basement. On the way to the basement, Minnifield was able to escape and run outside. The two men inside the house fled and the police officers pursued them. The police found defendant Hughes nearby, lying next to a white car, as if trying to hide. Hughes was sweating, he had a cut on his head, and he had shotgun shells and a

> hockey mask in his pocket. Defendant Jackson also was apprehended nearby trying to climb a fence. He was out of breath and sweating profusely. He later told the police that he was the lookout in the backyard, not one of the men who entered the house. The police discovered the shotgun on the floor in Minnifield's basement, a broken window in the bedroom, and a bag full of tools and duct tape. The house had been ransacked.
>
> At Hughes' trial, Minnifield testified that he did not keep any weapons in his house and that he had never seen the shotgun used by his assailants before the night in question. At Jackson's trial, approximately six weeks later, Minnifield testified that the shotgun found in his house had always been there and was for protection. Minnifield admitted that he had lied about this fact at Hughes' trial because he was scared of going to jail, as possession of the shotgun was illegal. He claimed that all other testimony he gave was truthful.

*People v. Hughes*, No. 304182, 2013 WL 3021504, at *1–2 (Mich. Ct. App. June 18, 2013).

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den.* 495 Mich. 939, 843 N.W.2d 243 (2014); *reconsideration den.* 495 Mich. 997, 845 N.W.2d 115 (2014).

Hughes filed a petition for writ of habeas corpus, which was held in abeyance to permit him to return to the state court to properly exhaust certain claims. *Hughes v. Winn*, No. 2:15-CV-12653, 2015 WL 5063292 (E.D. Mich. Aug. 27, 2015).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Hughes*, No. 10-012684-02-FC (Wayne Cty. Cir. Ct., Jan. 29, 2016). Hughes acknowledged that he did not appeal the denial of his post-

3

conviction motion to the Michigan appellate courts.

On April 5, 2017, this Court granted Petitioner's Motion to Lift the Stay and File an Amended Habeas Petition. In his amended habeas petition, Petitioner seeks relief on the following ground:

> A writ of habeas corpus should issue where, at a later trial of the co-defendant, the complaining witness admitted he gave perjured testimony on a material issue in petitioner's trial.

Dkt. No. 10, p. 9 (Pg. ID 89).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), demands the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme

Court] on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).

First, an "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, to obtain habeas relief in federal court, state prisoners must show that the state court's rejection of their claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

Petitioner claims that he was denied a fair trial because the victim committed perjury when he testified falsely at Petitioner's trial that he did not own the shotgun that police recovered from his house. Seeking relief on that basis, Hughes raised the following four claims in his original habeas petition:

> I. Due process entitlement to a new trial based on newly discovered perjured testimony.
>
> II. Denial of fair trial and due process [based on the prosecutor's knowing use of perjured testimony].
>
> III. Denial of effective assistance of [trial] counsel.
>
> IV. Denial of effective assistance of appellate counsel.

*See* Dkt. No. 1.

This Court held the original petition in abeyance so that Petitioner could exhaust his second through fourth claims. Petitioner filed a post-conviction motion for relief from judgment with the trial court, but did not appeal the denial of that motion to the Michigan appellate courts.

Respondent argues that Petitioner has abandoned the second, third, and fourth claims raised in his original petition because he did not raise them again in his amended petition. Indeed, in his amended petition, Petitioner does not raise again the ineffective assistance of counsel claims included in his first petition, i.e. claims

three and four. As for the second claim in his original petition, Hughes suggests in his reply brief in support of the amended petition that he has chosen to abandon this claim too. But, Hughes argues in the amended petition that the prosecutor knowingly used perjured testimony. Therefore, he raises this claim again, albeit in consolidation with the first claim from the original petition.

"Generally, amended pleadings supersede original pleadings." *Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016) (citing *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014)). This rule applies to petitions for writ of habeas corpus. *Id.* (citing *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014)). Exceptions arise where (1) "a party evinces an intent for the amended pleading to supplement rather than supersede the original pleading"; and (2) "a party is forced to amend a pleading by court order." *Id.* (citations omitted). And, "[a]n amended pleading supersedes a former pleading if the amended pleading 'is complete in itself and does not refer to or adopt a former pleading[.]' " *Id.* (quoting *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014).

Here, Hughes's amended habeas petition supersedes his original habeas petition, at least with respect to the ineffective assistance of counsel claims. He makes no factual allegations of ineffective assistance of counsel in his amended petition nor does he argue that trial or appellate counsel was ineffective. Moreover,

7

even if the amended petition constituted a continuation of the original petition, Hughes represented in his reply brief that he has chosen to forgo these two claims. *See* Dkt. No. 15, p. 1 (Pg. ID 886). Habeas petitioners can withdraw a claim from a petition as long as they do so knowingly, voluntarily, and intelligently. *Daniel v. Palmer*, 719 F. Supp. 2d 817, 828 (E.D. Mich. 2010); *rev'd on other grds sub nom. Daniel v. Curtin*, 499 F. App'x 400 (6th Cir. 2012). This Court concludes then that Hughes does not assert ineffective assistance of counsel claims in his amended petition.

With respect to Petitioner's second claim from the original petition, Hughes intends to allege—despite contentions to the contrary in his reply brief—that the prosecutor knowingly used perjured testimony. Petitioner argues in his amended petition that the prosecutor knew that Minnifield committed perjury. The Court finds that Petitioner intends to raise this claim again, although in consolidation with the first claim in his original petition. Accordingly, the Court holds that this claim is properly before this Court.

Respondent counters that Hughes has procedurally defaulted on the second claim because he failed to properly exhaust the claim; he did not appeal the denial of that motion to the Michigan appellate courts and no longer has a remedy with which to do so.

Criminal defendants in Michigan must appeal the denial of a post-conviction motion to the Michigan Court of Appeals and the Michigan Supreme Court to satisfy the claim exhaustion requirement. *See, e.g.*, *Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002). A criminal defendant in Michigan has six months from the denial of a motion for relief from judgment by the trial court to file an application for leave to appeal with the Michigan Court of Appeals. *See* M.C.R. 6.509(A); M.C.R. 7.205(F)(3). Therefore, the window for Petitioner to appeal the denial of his post-conviction motion has elapsed.

No state court remedies are available to Petitioner for him to exhaust his claims. Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can file only one post-conviction motion for relief from judgment. *See Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007). "If a prisoner fails to present his claims to the state courts and he is now barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust." *Hannah v. Conley*, 49 F.3d 1193, 1195–96 (6th Cir. 1995). "[T]he prisoner will not be allowed to present claims never before presented in the state courts," the Sixth Circuit wrote, "unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (citing *Coleman*

*v. Thompson*, 501 U.S. 722, 750–51 (1991)).  A claim of actual innocence will excuse this "cause and prejudice" requirement.  *Id.* at 1196 n.3.

Procedural default is not a jurisdictional bar to review of a habeas petition on the merits.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  Indeed, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." (alteration in original) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997))).  Hughes's claim that the prosecutor knowingly used perjured testimony, even if not properly exhausted, is part and parcel of his general perjury argument.

This argument is unconvincing, as demonstrated through evaluating Petitioner's broader perjury claim.  Petitioner raised the perjury claim for the first time in a motion for a new trial.  The court denied the motion, concluding that Minnifield's ownership of the sawed off shotgun did not invalidate Hughes's conviction for unlawful possession of the firearm, and Hughes's possession of the shotgun supported all his convictions.  *People v. Hughes*, No. 10-012684-02-FC, Findings of Fact and Conclusions of Law, at *4 (Wayne Cir. Ct., June 18, 2012),

Dkt. No. 14-13. The court further noted that in all other aspects the victim's testimony was supported by the police officers' testimony. *Id.* The trial judge denied Petitioner's motion for a new trial, reasoning that "in light of the other direct and circumstantial evidence against defendant, there is no indication the complainant's admittedly false testimony resulted in a miscarriage of justice, warranting a new trial." *Id.* at *4–5 (Pg. ID 555–56).

> The Michigan Court of Appeals likewise rejected Petitioner's claim:
>
> At Hughes' trial, Minnifield testified that the shotgun used in the crimes did not belong to him and had not been in his home before the break-in. However, at the time of Jackson's trial, Minnifield testified that the shotgun was in his house before the crimes occurred. This Court granted Hughes' motion to remand so that he could file a motion for new trial. The trial court denied Hughes' motion for a new trial, finding that regardless of Minnifield's testimony about owning the gun, his story of the crimes was corroborated by police officer testimony. The trial court did not abuse its discretion.
>
> . . .
>
> In the instant case, Hughes was aware of the information at issue—Minnifield's ownership of the shotgun and his statements denying it—before trial. At the preliminary examination, Minnifield denied that the gun was his. However, during Hughes' trial, defense counsel requested a hearing outside the presence of the jury to discuss the admission of a police report. The relevancy was that in the report, the responding officer indicated that Minnifield claimed ownership of the shotgun on the night of the incident. The parties stipulated to admission of the officer's report at Hughes' trial.
>
> Following admission of the report, Minnifield was re-called to the witness stand. He again denied ownership of the shotgun and claimed

11

> that he had never seen it before the night in question. Immediately thereafter, closing arguments commenced and the defense directed the jury's attention to the relevant statements in the police report. Highlighting the discrepancy between Minnifield's testimony at trial and the police report, Hughes argued that Minnifield had lied to the jury regarding ownership of the shotgun.

*People v. Hughes*, 2013 WL 3021504, at *2–3.

The trial judge rejected Petitioner's perjury claim on similar grounds when he raised the claim again in his post-conviction motion. *People v. Hughes*, No. 10-012684-02-FC, *4–5 (Wayne Cty. Cir. Ct., Jan. 29, 2016).

Hughes's perjury claim is also unsuccessful here. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' " *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112, (1935)). A prosecutor who allows false evidence or testimony to go uncorrected has thereby deprived a defendant of due process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To succeed on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a criminal defendant must show that the statements were false and material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). A habeas petitioner has a higher burden than a criminal defendant, however. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000). A habeas petitioner must show that a witness's

statement was "indisputably false," rather than merely misleading. *Id.*

Petitioner's claim will not succeed for several reasons. First, Hughes has not shown that the prosecutor knew that Minnifield testified falsely at trial. *See Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009). Although the prosecutor may have been aware of Officer Gregory Barrett's police report—in which Officer Barrett indicated that Minnifield admitted to owning the sawed-off shotgun found at his home—this fact, standing alone, is insufficient to establish that the prosecutor knew Minnifield testified falsely at trial about his ownership of the shotgun. At most, it demonstrated an inconsistency between Officer Barrett's report and Minnifield's testimony. *See Coe*, 161 F.3d at 343 (observing that "mere inconsistencies" do not show indisputable falsity (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989))).

Second, even if Officer Barrett's report put the prosecutor on notice that Minnifield might have testified falsely about ownership of the shotgun, defense counsel was also aware that Minnifield had told Officer Barrett that he owned the shotgun. The prosecutor's failure to correct Minnifield's trial testimony, then, did not violate Petitioner's due process rights or entitle him to habeas relief. Because defense counsel also had access to Officer Barrett's report, where Minnifield acknowledged ownership of the shotgun, counsel was in an equal position as the

prosecutor to clarify or correct Minnifield's testimony. *See Brooks v. Tennessee*, 626 F.3d 878, 896 (6th Cir. 2010).

The third basis is that defense counsel informed the jury of Minnifield's prior inconsistent statement (in which he acknowledged that he owned the shotgun); thus, Petitioner has not established that he is entitled to a new trial because Minnifield testified falsely regarding ownership of the shotgun. *See United States v. Ward*, 190 F.3d 483, 491 (6th Cir. 1999) (rejecting claim that government witness committed perjury because "the [lower] court gave the defendants several opportunities to cross-examine and recross-examine the witnesses to bring any inconsistencies in testimony to the attention of the jury[,]" and noting that "[the court] know[s] of no rule that stands for the proposition that, even with full cross-examination, the introduction of perjured testimony per se warrants a new trial."). Indeed, defense counsel stipulated to the admission of Officer Barrett's report into evidence, and this report indicated that Minnifield admitted to ownership of the shotgun. Dkt. No. 14-8, pp. 78–89 (Pg. ID 462–473). Defense counsel in his closing argument brought Minnifield's prior admission of ownership to Officer Barrett to the attention of the jury. *Id.* at pp. 99–100 (Pg. ID 483–84).

Fourth, Petitioner has not proven that the gun ownership issue was material to his convictions for armed robbery, home invasion, unlawful imprisonment,

felonious assault, and the various firearms offenses. Hughes could have located and used Minnifield's weapon against him, and ownership of the shotgun was not an element of any of the crimes for which Hughes was convicted. Minnifield's false testimony about not owning the shotgun was immaterial to Petitioner's convictions. *See United States v. Green*, No. 91-10403, 1992 WL 337708, at *1 (9th Cir. Nov. 18. 1992) (table) (concluding defendant's allegation—that another witness perjured himself by testifying that he did not own the weapon—was irrelevant; the defendant was convicted of being a felon in possession of a firearm, not of owning one).

Finally, in light of the corroborating evidence from the police, including the Petitioner's arrest directly behind the victim's house, any alleged perjury was harmless error at most. *See Rosencrantz*, 568 F.3d at 588. Petitioner is therefore not entitled to relief.

## IV. Conclusion

The Court will DENY the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This denial requires a demonstration that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve

encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2254 CASES, R. 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated herein, the Court will deny Hughes a certificate of appealability because reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong. *Johnson v. Smith*, 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

The Court will also deny Petitioner leave to appeal *in forma pauperis* because the appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. Order

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

Dated: January 23, 2018     /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 23, 2018, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Deputy Clerk